IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CMH HOMES, INC.; and
VANDERBILT MORTGAGE
AND FINANCE, INC.                                                                PETITIONERS

VS.                                      CASE NO. 6:12-CV-06007

THOMAS R. GOODNER; and
LINDA D. GOODNER                                                                  RESPONDENTS

## ORDER

Before the Court is Respondents' Motion to Dismiss. (ECF No. 11). Petitioners have responded (ECF No. 23), Respondents have replied (ECF No. 27), and Petitioners have sur-replied. (ECF No. 30). The matter is ripe for the Court's consideration. For the following reasons, the motion will be granted.

## BACKGROUND

This case is related to a case, *Goodner v. Clayton Homes*, No. 4:12-CV-04001, pending in the Texarkana Division. Both cases arise from a state-court action the Goodners brought against Clayton Homes and Vanderbilt Finance. The Goodners allege that Clayton and Vanderbilt, who are subsidiaries of the same parent corporation, conspired in a kickback scheme in which Clayton homes referred purchasers to Vanderbilt for financing. In return for the referral, Vanderbilt would allegedly pay Clayton a kickback.

The Goodners filed the state-court suit in Lafayette County Circuit Court on November 10, 2011. Clayton and Vanderbilt filed this case in this Court on January 5, 2012, alleging that the state-court suit is subject to mandatory arbitration. The next day, January 6, 2012, Clayton

and Vanderbilt removed the underlying state-court suit to this Court. Thus, there are now two cases before the Court involving the same parties: this arbitration case, and the underlying removal case, *Goodner v. Clayton Homes*, No. 4:12-CV-04001. The Goodners moved the Court to remand the removed state-court case, and the Court has granted that motion. (*Goodner v. Clayton Homes*, ECF No. 37). The Goodners have also moved the Court to dismiss *this* case because subject-matter jurisdiction is lacking. That motion to dismiss is now before the Court.

## STANDARD OF REVIEW

The Goodners move for dismissal under Federal Rule of Civil Procedure 12(b)(1). A challenge to jurisdiction under Rule 12(b)(1) may proceed one of two ways: as a facial challenge, or as a factual challenge. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The difference boils down to what material the Court considers in deciding the motion.

If the movant merely argues that the other party has not alleged sufficient jurisdictional facts, then the Court looks only at the pleadings and essentially uses the Rule 12(b)(6) standard to determine whether the complaint states a facially plausible jurisdiction claim. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (stating the post-*Twombly* standard for rule 12(b)(6)). That type of challenge is a facial challenge.

If, on the other hand, the movant challenges the factual accuracy of the other party's jurisdiction claims and asks the Court to consider matters outside the pleadings to determine their accuracy, then the Court determines the factual accuracy of the jurisdiction claims without giving the other party any beneficial 12(b)(6) assumption. *Osborn*, 918 F.2d at 729 n.6; *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). That type of challenge is a factual challenge.

Because the Goodners are challenging the factual accuracy of Clayton and Vanderbilt's jurisdiction claims—particularly the amount in controversy—the Court considers the Goodners' challenge a factual one.

## DISCUSSION

Clayton and Vanderbilt brought this suit under section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (2006). The Goodners argue that the Court does not have jurisdiction over the suit. To enforce an arbitration agreement, a party may petition any federal district court "which, save for such agreement, would have jurisdiction…of the subject matter of a suit arising out of the controversy between the parties…." 9 U.S.C. § 4. In other words, the existence of an arbitration agreement does not itself provide federal jurisdiction—the statute requires an "independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).

Thus, the Court "should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it." *Vaden v. Discover Bank*, 556 U.S. 62 (2009). To put it simply, would the court have jurisdiction over the "'substantive conflict between the parties'" apart from the arbitration agreement? *Id.* at 63 (quoting *Vaden v. Discovery Bank*, 396 F.3d 366, 370 (4th Cir. 2005)). The Court must therefore put aside the present arbitration controversy and ask whether it would have jurisdiction over the parties' underlying conflict: the state-court kickback suit.

Clayton and Vanderbilt argue that the Court has both federal-question and diversity jurisdiction over the state-court kickback suit. The Court has considered their arguments in the Goodner removal case, and has determined that it does not have jurisdiction. For the reasons below, the Court's answer in the Goodner removal case applies here too.

### I. Federal-question jurisdiction

The Goodners attempt to stay out of federal court in the underlying case by relying in part on an Arkansas statute that Clayton and Vanderbilt contend is designed to help plaintiffs keep their cases in state court. ARK. CODE ANN. § 16-63-221. Clayton and Vanderbilt argue that "[t]he use of a state statute to defeat federal subject matter jurisdiction presents a substantial question of federal law," thus giving the Court federal-question jurisdiction under 9 U.S.C. § 4. (ECF No. 1, at 17).

"A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law." *Vaden*, 556 U.S. at 62. The Court has determined in the Goodner removal case that the underlying action does not arise under federal law, because Defendants' federal-law arguments are merely federal defenses, and federal defenses cannot create federal-question jurisdiction. (*Goodner v. Clayton Homes*, ECF No. 37, at 11–14). That determination applies equally here. The Court thus lacks federal-question jurisdiction over this case.

### II. Diversity jurisdiction

Diversity jurisdiction exists under 28 U.S.C. § 1332(a) if a suit is between parties from different states and more than $75,000 is in controversy. Class-action diversity jurisdiction exists under 28 U.S.C. § 1332(d) if any plaintiff class member is diverse from any defendant and more than $5 million is in controversy. The Court determined in the Goodner removal case that neither of these jurisdictional grounds exist in the underlying case because the Goodners have capped their amount in controversy to an amount below the federal-court minimum.

#### a. Diversity of citizenship

In the removal case and in this case, the parties are diverse. Clayton and Vanderbilt are

Tennessee residents, while the Goodners reside in Arkansas. Diversity-of-citizenship analysis under 9 U.S.C. § 4 looks only at the parties before the federal court plus those that are indispensable under Federal Rule of Civil Procedure 19. *Northport Health Servs. v. Rutherford*, 605 F.3d 483, 491 (8th Cir. 2010). Clayton, Vanderbilt, and the Goodners are the only parties before the Court in this case. Diversity of citizenship therefore exists here.

### b. Amount in controversy

The Goodners argue that, to determine the amount in controversy in this case, the Court simply must look at the underlying controversy—i.e., the state-court case—determine the amount at stake there, and apply that amount here. For that argument, they rely chiefly on *Vaden's* "look through" approach, i.e., the approach of looking through the arbitration dispute to what's at stake in the underlying action.

Clayton and Vanderbilt, on the other hand, argue that the Court must apply the Eighth Circuit's rule from *Advance America Servs. v. McGinnis*, 526 F.3d 1170 (8th Cir. 2008). That rule states that the amount in controversy is determined by the value to the plaintiff of the right sought to be enforced, and so the amount in controversy in a § 4 arbitration action is therefore the value at stake in the arbitration dealing with the underlying case. *Id.* at 1174. Clayton and Vanderbilt argue that the value of the injunction they seek in arbitration "exceeds [the] jurisdictional minimum by millions of dollars." (ECF No. 23, at 25).

The difference matters. If the Court looks through the arbitration case to the underlying action, then the Court's amount-in-controversy determination in the Goodner removal case controls here, and the Court lacks diversity jurisdiction. If the Court uses the *Advance America* approach, then the Court must determine whether Clayton and Vanderbilt have shown by a preponderance of the evidence that the arbitration claim is not to a legal certainty less than the

5

jurisdictional minimum. *See Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC*, 620 F.3d 926, 931 (8th Cir. 2010) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

The Court finds that *Vaden's* look-through approach is the right one to use. The successive cases compelling this conclusion are discussed below.

### 1. The *Advance America* rule

*Advance America* was decided in May 2008. In that case, the Eighth Circuit held that: 1) the amount in controversy is determined by the value to the plaintiff of the relief it seeks; 2) value is measured by focusing on the object of the particular litigation brought by the plaintiff; 3) the object of the litigation before the federal court in § 4 cases is to compel arbitration of the underlying state-court claims; 4) therefore, "the object of [the] litigation is the value at stake in the arbitration" before the Court. *Advance America*, 526 F.3d at 1173–74.

Under the *Advance America* rule, then, the amount-in-controversy focus is only secondarily on the underlying state-court suit—the real focus is on the value of the arbitration to the federal-court plaintiff. Indeed, *Advance America* quoted from a Seventh Circuit case saying "[s]ince the present suit is not a removal suit but rather an independent federal suit, it is the stakes of the arbitration and not the possible state court award that control." *Id.* at 1174 (quoting *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 841 (7th Cir. 1999)). Intervening cases, however, have called the *Advance America* rule into question.

### 2. The *Vaden* rule

In March 2009, the Supreme Court decided *Vaden v. Discover Bank*, 556 U.S. 49 (2009). In that case, the federal plaintiff argued that the district court had federal-question jurisdiction over the underlying case. The Supreme Court disagreed, holding that "[a] federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under'

federal law….." *Id.* at 62. Looking through the federal case to the underlying state-court case, the Court found that the only federal issue in the state-court case was the state-court defendant's counterclaim, which, under longstanding federal law, cannot provide federal-question jurisdiction. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002). Thus, the district court, lacking federal-question jurisdiction over the *state* case, lacked federal-question jurisdiction over the *federal* arbitration case as well. *Vaden*, 556 U.S. at 66.

Even though it is a federal-question case, *Vaden* is important for what it has to say about general § 4 "look through" analysis. *Vaden* examined § 4's language and interpreted it to mean that "the district court should assume the absence of the arbitration agreement and determine whether it would have jurisdiction…[over] the 'substantive conflict between the parties'" without it. *Id.* at 62–63. *Vaden*, in other words, "read § 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Id.* at 66.

Notably, the *Vaden* majority took that view over the dissent's narrower view that the pertinent "controversy" is "the specific dispute asserted to be subject to arbitration…." *Id.* at 73 (Roberts, C.J., dissenting). The dissent states the difference thusly: "Instead of looking to the controversy the § 4 petitioner seeks to arbitrate, the majority focuses on the controversy underlying that complaint, and asks whether 'the *whole* controversy,' as reflected in 'the parties' state-court filings,'…" gives jurisdiction. *Id. Vaden's* look-through approach thus calls into question the Eight Circuit's narrow focus in *Advance America*.

### 3. The post-*Vaden* rule

The only Eighth Circuit case to discuss *Vaden*, *Northport Health Servs. v. Rutherford*,

605 F.3d 483 (8th Cir. 2010), recognized the potential conflict between *Vaden* and *Advance America*. *Northport Health Services* did not pronounce an amount-in-controversy rule (the case concerned diversity of citizenship), but it did comment on the issue. The court's comments bear quoting in full:

> In *Advance America* we looked through only to "the value at stake in the arbitration" sought to be compelled, 526 F.3d at 1174, not to "the whole controversy as framed by the parties" in a parallel state court action. If the nature of the "look through" is the issue—and without question some type of look through is needed to determine the amount in controversy for diversity jurisdiction purposes—the look through we conducted in *Advance America* is comparable to the look through unsuccessfully urged by the dissenting Justices in *Vaden*.

*Id.* at 489. The "nature of the 'look through'" is the issue now squarely before the Court, and on that issue, *Advance America* is no longer applicable. Rather, the *Advance America* rule is the one "unsuccessfully urged" by the *Vaden* dissent. *Id.* It is, in other words, no longer the correct view.

In light of *Vaden* and the Eighth Circuit's own comments, the Court declines to apply *Advance America's* amount-in-controversy rule. Therefore, per *Vaden*, the Court must ask not what "'the value at stake in the arbitration'" is, but instead what the value of "'the whole controversy as framed by the parties' in [the] parallel state court action" is. *Id*. (quoting *Advance America*, 526 F.3d at 1174, and *Vaden*, 556 U.S. at 67). The Court has answered the latter question in the Goodner removal case, and that answer controls here. (*Goodner v. Clayton Homes*, ECF No. 37). In that case, and therefore in this one, the Court finds the amount in controversy to be below the federal-court minimum. (*Goodner v. Clayton Homes*, ECF No. 37). Thus, the Court lacks jurisdiction over this action.

## CONCLUSION

For the reasons above, and those in the Court's Goodner remand order, the Court lacks jurisdiction over this case. Therefore, the Goodners' Motion to Dismiss (ECF No. 11) should be

8

and hereby is **GRANTED**. This case is accordingly **DISMISSED WITHOUT PREJUDICE**. *Satterlee v. United States*, 432 F. Supp. 2d 941, 948 (W.D. Mo. 2006) (dismissing without prejudice for lack of subject-matter jurisdiction).

    IT IS SO ORDERED, this 10th day of September, 2012.

                                              /s/ Susan O. Hickey
                                              Hon. Susan O. Hickey
                                              United States District Judge